UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARL MEYERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| PRECISE AMBULANCE SERVICE, LLC, | ) | |
| STEVEN SPRINKLE, STEPHEN D. | ) | |
| BUTLER, AND ARTHUR D. PRINGLE, III, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMAND |

## COMPLAINT

Plaintiff, as a Complaint against Defendants, alleges the following:

## I.   NATURE OF THE CLAIM

1.      This is an action brought to remedy discrimination in employment on the basis of

disability and for intentional infliction of emotional distress, negligent retention, assault and

battery, and conversion.

2.      The Defendants are a private ambulance company and one of its individual

owners and operators. Plaintiff was hired as a paramedic in March 2005. In September 2006, he

was promoted to Emergency Medical Services (EMS) Coordinator and later assumed the

responsibilities of General Manager. Plaintiff was supervised by Defendant Steven Sprinkle who

was verbally and psychologically abusive and on numerous occasions went into fits of rage,

throwing staplers, pens and other office supplies at Plaintiff and threatening him with his fists.

3.      In February 2010, suffering from depression, Plaintiff was at home and overdosed

on prescribed medication. He was taken to the hospital, given a complete psychological

examination, treated with a standard antidepressant medication and released with no restrictions on his work or other activities.

4.      After receiving treatment for depression, Plaintiff presented no threat of any kind to himself or to others. He was released from the hospital on a Friday.

5.      On the following Monday morning while Plaintiff was preparing to come to work, Steve Sprinkle called him and told him to "take some time off." He told Plaintiff that he was going to have him "field phone calls" and do some other things but that he should "stay home."

6.      For approximately the next five weeks, Plaintiff performed his job duties full time away from the office, primarily from his house. Defendants refused to allow him to return to work at the company's main offices and kept him segregated from the rest of the workforce.

7.      On or around March 8, 2010, Defendants informed Plaintiff that they were terminating his employment because, they said, he could not "handle the job."

8.      Defendants fired Plaintiff based upon his disability, major depression, and because Defendants regarded him as disabled, stigmatized him because of his disability, and because Plaintiff had a history of major depression.

9.      As a result of Plaintiff's termination, Plaintiff suffered substantial financial losses, severe emotional distress and other injuries. Defendants also converted his personal property. Plaintiff also suffered severe emotional distress as a consequence of Steve Sprinkle's reign of terror over him, which Defendants Pringle and Butler wantonly permitted.

10.     Plaintiff seeks declaratory relief, back pay and other equitable make whole relief, compensatory damages, punitive damages, and attorney's fees and costs.

2

II.     **JURISDICTION AND VENUE**

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Plaintiff has been at all times relevant herein a resident of the City of Chicago, County of Cook, State of Illinois. The acts that gave rise to the claims alleged in this Complaint occurred in Illinois and in this District.

III.    **EXHAUSTION OF ADMINISTRATIVE REQUIREMENT**

13.     Plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

14.     On May 21, 2010, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") charging Precise Ambulance Service, LLC with discrimination against him on the basis of disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*. ("ADA"). A true and correct copy of the charge form (without attachment) is attached hereto as Exhibit 1.

15.     On April 26, 2011, Plaintiff received notification of right to sue from the EEOC. A true and accurate copy of Plaintiff's right to sue notice is attached hereto as Exhibit 2.

IV.     **PARTIES**

A.      **Plaintiff**

16.     Plaintiff Carl Meyers is and was at all times relevant herein a resident of the City of Chicago, County of Cook, State of Illinois.

3

17.     Plaintiff was employed by Defendant Precise Ambulance Service, LLC ("Precise Ambulance") from March 2005 to March 2010. During his employment, Plaintiff developed depression, a mental illness and disability.

18.     Plaintiff is a "qualified individual" under the ADA, 42 U.S.C. §12111.

**B.     Defendants**

19.     Precise Ambulance is and was at all times relevant herein an Illinois limited liability corporation with principal offices in Chicago Ridge, County of Cook, State of Illinois.

20.     Precise Ambulance is and was at all times relevant herein an employer as defined by the ADA and the Illinois Human Rights Act (IHRA).

21.     Steven ("Steve") Sprinkle was at all relevant times herein the chief operating officer of Precise Ambulance and a 23% owner of the company. On information and belief, Mr. Sprinkle is a resident of the County of Will, State of Illinois, in this District.

22.     Defendant Stephen D. ("Manny") Butler is and was at all relevant times herein the risk management and chief financial officer of Precise Ambulance and a 23% owner of the company. On information and belief, Mr. Butler is a resident of the County of Cook, State of Illinois, in this District.

23.     Defendant Arthur D. ("Chip") Pringle, III is and was at all relevant times herein the majority (51%) owner of Precise Ambulance. Mr. Pringle is a resident of Palos Park, County of Cook, State of Illinois which is located in this District.

**V.     ADDITIONAL FACTUAL ALLEGATIONS**

24.     Precise Ambulance began operating in November 2004 with three ambulances.

25.      In March 2005, Plaintiff was hired as a paramedic. At the time he was hired, he had ten years of experience working in the field as a paramedic and EMS coordinator. He worked through Christ Hospital in Oak Lawn which referred him to the job at Precise Ambulance.

26.      For approximately 18 months, from March 2005 through August 2006, Plaintiff worked as a paramedic and reported to the EMS coordinator. During his employment as a paramedic the company began giving him additional responsibilities and then promoted  him to EMS Coordinator on September 1, 2006.

27.      Thereafter, Plaintiff performed all of the responsibilities of the EMS coordinator and progressively was assigned more and more responsibility for the management of operations until he became a full-fledged general manager.  Plaintiff supervised every employee of the company other than the owners. He managed all human resource activities including the hiring, firing, performance reviews, and determination of wage rates of all employees. He drafted the company personnel policies and employee handbook. He produced payroll; executed contracts for employee benefits, liability insurance and property insurance; ordered medical supplies; communicated and maintained relationships with hospitals; and dealt with lawyers and insurance companies on negligence claims. For all intents and purposes, Plaintiff ran the company.

28.      Plaintiff's performance was exceptional. The company profited under his management. Operations expanded from three ambulances to 17. Plaintiff also oversaw the opening of a second dispatch facility in Northwest Indiana.

29.      Plaintiff worked 12-14 hours a day, 6-7 days a week and rarely took a vacation. On one vacation he did take, to Disney World with his family, he received 64 phone calls from Steve Sprinkle in a single day.

30.     On more than one occasion, the company's owners promised Plaintiff "sweat equity," i.e. stock in the company in exchange for his labor. However, they never followed through on their promises.

31.     During his employment, Plaintiff was selected off the list of paramedics maintained by the Chicago Fire Department (CFD) and received a conditional offer of employment. CFD paramedic is a coveted position. Plaintiff asked Mr. Sprinkle and Mr. Butler for a leave of absence to attend the CFD training academy but they would not allow it. He asked them to adjust his schedule so that he could attend the training academy during the day and work for the company at night but they would not allow that either. Instead, they encouraged Plaintiff to decline the offer from the CFD and to continue working for them, promising him that he would "always" have a job with the company and reiterating that they were going to give him an ownership interest.

32.     From September 1, 2006 through his termination in March 2010, Plaintiff reported to Mr. Sprinkle who was verbally and psychologically abusive and terrorized Plaintiff and other employees with his angry rages. On numerous occasions, Mr. Sprinkle struck Plaintiff by throwing staplers and supplies at him and threatened him with his fists. He would instruct Plaintiff to wear a business suit to work each day so that he could engage in marketing activities but would then order him to do greasy repairs on ambulances, destroying his clothing.

33.     While working under Mr. Sprinkle's supervision, Plaintiff had surgery to repair a hernia and provided a doctor's note indicating that he should be off of work for two weeks. When Mr. Sprinkle saw the note, he called Plaintiff at home screaming and said, "You better get your fucking ass into work." Plaintiff returned to work and ended up ripping open his stitches.

34.     Manny Butler, the CFO, and Chip Pringle, the majority owner, who together owned three-quarters of the company's stock, were fully aware of Steve Sprinkle's abusive behavior and knew that he had a diagnosed anger management disorder. Nonetheless, they retained him in his employment, failing to protect Plaintiff and other employees from his terror and abuse.

35.     The primary response of Messrs. Butler and Pringle to Steve Sprinkle's dysfunction was to remove responsibilities from him and turn those responsibilities over to Plaintiff.

36.     By February 2010, Plaintiff was suffering from major depression, precipitated by being forced to work in inhumane conditions under Mr. Sprinkle, terrorized by his verbal and psychological abuse and physical threats, and with inadequate support to carry out all of the responsibilities that had been assigned to him as a result of Mr. Sprinkle's dysfunction.

37.     Plaintiff's depression was not treated. Nonetheless, he was able to carry out each and every responsibility of his job.

38.     During or around the first week of February 2010, Plaintiff was at home and overdosed on a muscle relaxer that a company physician had prescribed to him for an injury that he had sustained at work. The prescription was filled at a pharmacy. The medication is not one that is stocked by an ambulance company.

39.     After he took the medication, Plaintiff was taken by ambulance to Christ Hospital. After a complete psychological examination, he was prescribed Lexapro (escitalopram) which is in the class of antidepressants known as selective serotonin reuptake inhibitors (SSRIs) which work by increasing the amount of serotonin, a natural substance in the brain.

40. Plaintiff was released from the hospital in three days. His discharge papers reflected that he was medically released to return to work. His physician also called Steve Sprinkle and told him that Plaintiff was fully fit to return to work.

41. Plaintiff's medication was effective in treating Plaintiff's depression and allowing him to function in his everyday life. After receiving treatment for his depression, Plaintiff presented no threat of any kind to himself or others.

42. Plaintiff was released from the hospital on a Friday. While he was preparing to leave for work the following Monday morning, Steve Sprinkle called him at home and told him to "take some time off." He told Plaintiff that he was going to have him "field phone calls" and do some other things but that he should "stay home."

43. For approximately the next five weeks, Plaintiff performed his job duties full time away from the office, primarily from his house. Defendants kept him segregated from the rest of the workforce, refusing to permit him to return to the office. On two or three occasions, Mr. Sprinkle arranged to meet Plaintiff at a restaurant and brought his laptop so that he could do payroll.

44. On or around March 8, 2010, Steve Sprinkle and Manny Butler called Plaintiff to a meeting at a Leona's restaurant and ordered him lunch. They then informed him that they had met together with Chip Pringle and that, together, the three of them had decided to terminate his employment. When Plaintiff protested and described everything that he had done for the company, they stated, "But you can't handle the job." They also stated that they had decided that firing him was the "best thing for the company."

8

45.     Defendants made the decision to fire Plaintiff based upon his disability, major depression, and because Defendants regarded him as disabled, stigmatized him because of his disability, and because Plaintiff had a history of major depression.

46.     On or around March 10, 2010, Steve Sprinkle and Manny Butler met with Plaintiff again at a Starbucks and asked him to resign and to sign a paper releasing any legal claims that he might have against the company. Plaintiff refused.

47.     On March 12, 2010, Mr. Butler sent Plaintiff a letter terminating his employment effective immediately.

48.     As a direct and proximate result of Plaintiff's termination, he has sustained and continues to sustain lost wages and other benefits of employment and emotional distress and other damages. The severe strain of unemployment caused Plaintiff's marriage to fall apart. After the end of his marriage, Plaintiff lost his health insurance which jeopardized his access to his antidepressant medication. Plaintiff's house was also foreclosed.

49.     Also, as a direct and proximate result of Steve Sprinkle's reign of terror over him, which Defendants Pringle and Butler allowed, Plaintiff suffered severe emotional distress. This distress was a precipitating factor in Plaintiff's drug overdose.

50.     Finally, Defendants converted personal property that Plaintiff kept in the office. This property includes an external hard drive; digital camera; EMS books; personal files, including highly personal divorce and mortgage papers; and hand tools. Plaintiff has made several demands for the return of this property, all of which have been ignored.

## COUNT I
**Americans with Disabilities Act, 42 U.S.C. §12112**
**(Defendant Precise Ambulance)**

51.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

52.     Through its conduct alleged above, Defendant Precise Ambulance discriminated against Plaintiff on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §12112.

53.     As a direct and proximate result of Defendant's discrimination, Plaintiff suffered damages including lost wages and other benefits of employment and emotional distress.

## COUNT II

**Illinois Human Rights Act, 775 ILCS 5/2-101**
**(Defendant Precise Ambulance)**

54.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

55.     Through its conduct alleged above, Defendant Precise Ambulance subjected Plaintiff to unlawful discrimination on the basis of disability in violation of the IHRA, 775 ILCS 5/2-102.

56.     As a direct and proximate result of Defendant's discrimination, Plaintiff suffered damages including lost wages and other benefits of employment and emotional distress.

## COUNT III
**Intentional Infliction of Emotional Distress**
**(All Defendants)**

57.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

58.     Defendants' conduct alleged above was extreme and outrageous. Among other things, Defendants fired Plaintiff—who had run their business with total diligence, placing the

interests of the company above his own, and from whose work they had profited greatly—less than six weeks after an attempt to take his own life.

59.     At the time of Plaintiff's termination, Defendants knew that he was on medication for major depression and that ending his employment was likely to cause him great harm.

60.     In addition, Defendant Sprinkle's conduct toward Plaintiff during his employment was extreme and outrageous.

61.     Defendants intended to cause Plaintiff severe emotional distress.

62.     Defendants did cause Plaintiff severe emotional distress.

## COUNT IV
### Negligent Retention
**(Defendants Precise Ambulance, Butler and Pringle)**

63.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

64.     Defendants Butler and Pringle knew that Steve Sprinkle was unfit for his position as chief operating officer and as Plaintiff's supervisor so as to create a danger to Plaintiff and other third persons.

65.     Defendants Butler and Pringle knew of Mr. Sprinkle's unfitness for his position as chief operating officer and as Plaintiff's supervisor at the time of his retention.

66.     Steve Sprinkle's unfitness for his position as chief operating officer and as Plaintiff's supervisor proximately caused Plaintiff damages.

## COUNT V
### Assault and Battery
**(Defendants Sprinkle and Precise Ambulance)**

67.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

68.     Through his conduct described above, Defendant Sprinkle, with a knowing or

11

purposeful state of mind, intended to and did cause harmful or offensive physical contact with Plaintiff thus committing the intentional tort of battery.

69.     Through the conduct described above, Defendant Sprinkle, with a knowing or purposeful state of mind, caused Plaintiff an imminent apprehension of a battery which a reasonable person in similar circumstances would have also apprehended thus committing the intentional tort of assault.

70.     As a proximate result of Defendant's conduct, Plaintiff suffered damages.

**COUNT VI**
**Conversion**
**(All Defendants)**

71.     Plaintiff incorporates by reference the preceding paragraphs as alleged above.

72.     Plaintiff has an absolute right to the immediate possession of his tangible personal property.

73.     Through their conduct alleged above, Defendants have wrongfully deprived Plaintiff of his property and thus committed the tort of conversion.

74.     As a proximate result of Defendants' conduct, Plaintiff has suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

75.     A declaratory judgment that the practices complained of herein were unlawful and violated the Americans with Disabilities Act, 42 U.S.C. §12112, and the Illinois Human Rights Act, 775 ILCS 5/2-101.

76.     An order prohibiting Defendants from engaging in further discrimination in violation of the Americans with Disabilities Act and Illinois Human Rights Act.

77.     An award to Plaintiff of back pay, including lost wages and other benefits of employment; front pay and other make whole equitable relief; compensatory damages; and punitive damages.

78.     An award of pre-judgment and post-judgment interest.

79.     An award of attorney's fees and costs.

80.     Any and all other relief that the Court deems just and proper.

**JURY DEMAND**

81.     Plaintiff demands trial by jury of all issues so triable.

Dated: July 22, 2011                    Respectfully submitted,

                                        /s/ Marni Willenson
                                        Willenson Law, LLC
                                        542 S. Dearborn St., Suite 610
                                        Chicago, IL 60605
                                        (312) 546-4910
                                        marni@willensonlaw.com

                                        Attorney for Plaintiff